**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF WYOMING
The Honorable Michael E. Romero**

| | |
|---|---|
| In re: | Case No. 13-20211 |
| US BENTONITE, INC., | Chapter 11 |
| Debtor-in-Possession | |
| In re: | Case No. 14-20198 |
| ROCK SPRINGS MINERAL PROCESSING, | Chapter 11 |
| Debtor-in-Possession | |
| In re: | Case No. 14-20200 |
| ROCK SPRINGS PROPERTIES, INC. | Chapter 11 |
| | **Jointly Administered Under** |
| Debtor-in-Possession | **Case No. 13-20211** |

FILED
2:02 pm, 9/3/15
Tim J. Ellis
Clerk of Court

**ORDER**

Attorneys are legal professionals. As a condition to practicing law in Wyoming, attorneys must affirmatively swear to "support, obey and defend the Constitution of the United States and the Constitution and laws of the State of Wyoming, and [to] faithfully and honestly and to the best of [their] ability discharge the duties of an Attorney and Counselor at Law."[1] The duty of candor and honesty underscore this oath, and safeguard the judicial process. In this self-policing profession, truthfulness and disclosure are imperative. As a result, attorneys bear the risks associated with non-disclosure, even when the non-disclosure was the result of temporary lapses of judgment.

This matter comes before the Court on the Debtors' Motion to Approve Settlement Agreement ("Settlement Motion") and the objection thereto filed

---

[1] Wyoming Rules and Procedures Governing Admission to the Practice of Law, Sec. V Rule 504(a).

by the Office of the United States Trustee ("UST"); and the UST's Motion for an Order Disqualifying Winship & Winship, P.C. as Debtors' Counsel, Denying Compensation and Requiring Disgorgement of Funds Received ("Motion to Disqualify") and the Debtors' objection thereto.[2] The Court, having held a hearing and considered the evidence and legal arguments presented, hereby makes the following findings of fact and conclusions of law.[3]

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) as it involves matters concerning the administration of the estate.

## BACKGROUND

The only evidence submitted by the UST was the Statement of Undisputed Facts,[4] and indeed, the relevant facts are undisputed. On March 14, 2013 ("Petition Date"), US Bentonite, Inc. ("USB") filed its voluntary petition for relief under Chapter 11. On March 19, 2014, Rock Springs Mineral Processing ("RSMP") and Rock Springs Properties, Inc. ("RSP") each filed for relief under Chapter 11. On April 28, 2014, the Court ordered the joint administration of the USB, RSMP and RSP cases.

On April 10, 2013, the Court approved the Application to employ the law firm of Winship & Winship, P.C. ("Winship") as counsel for USB pursuant to 11 U.S.C. § 327(a). The Court later approved Winship as counsel for RSMP and RSP, as well.

---

[2] Debtors' Settlement Motion (Docket No. 532); UST's Response to Settlement Motion (Docket No.556); UST's Motion to Disqualify (Docket No. 566); Debtor's Response to Motion to Disqualify and Brief in Support of Response (Docket Nos. 585 and 586); and UST's Reply (Docket No. 589).

[3] *See* Minutes of Proceeding (Docket No. 601). The parties stipulated to the admission of the Debtors' Exhibits A through N, and the UST's Exhibit 1, and the Court admitted those exhibits for all purposes.

[4] *See* Statement of Undisputed Facts (Docket No. 580), admitted as UST's Exhibit 1.

As of the Petition Date, USB owed $35,955,000 on account of the debts relating to the claims of the Collateral Agents.[5] The total amount RSP and RSMP owed on the Collateral Agents' claims exceeded $39,000,000 as of March 19, 2014. The Collateral Agents are represented by Markus Williams Young & Zimmermann LLC ("Markus Williams") in these jointly-administered cases.

As of the Petition Date, the total amount the Debtors owed on account of the secured claims of First Interstate Bank was $5,385,339.83. First Interstate Bank retained Chapman Valdez & Lansing as counsel in these jointly-administered cases.

Excluding the deficiency claims on account of the debts held by the Collateral Agents and First Interstate Bank, PAB Good Trucking, LLC ("PAB Good") holds the largest unsecured claim and Modern Electric holds the second largest unsecured claim, excluding certain subordinated or affiliated notes which are junior to all unsecured claims.

The Collateral Agents and First Interstate Bank have competing interests against substantially all of the Debtors' assets (the "Assets"), with one exception. USB commenced an adversary proceeding against Modern Electric on March 12, 2015.[6] The parties settled the adversary proceeding for a $75,000 cash payment to USB, and the Court approved the settlement on March 29, 2015. USB is holding the $75,000 settlement proceeds ("Adversary Proceeds").

**A.   The Debtors' Asset Sale**

The Debtors' first attempt to package a sale of their joint assets failed, and USB began to wind down operations in January 2014. On July 8, 2014, the Debtors sought approval to employ SSG Advisors, LLC ("SSG") as a financial advisor, and the Court authorized the employment of SSG.[7] On July 15, 2014, the Debtors received and executed an asset purchase agreement for the sale and purchase of the Assets for $4,000,000 from

---

[5] The term "Collateral Agents" collectively refers to Les Baledge, as Collateral Agent of approximately $22,000,000 of 12% senior secured convertible bonds and approximately $8,500,000 of 12% senior secured convertible bonds, and Gus Blass III, as Collateral Agent for approximately $5,502,500 of 12% senior secured convertible bonds.

[6] *U.S. Bentonite v. Modern Electric*, Adv. Proc. No. 15-02005.

[7] *See* Docket Nos. 366 and 383.

Granite Peak Energy Services, LLC ("Granite Peak"), which was subsequently amended on August 6, 2014 (the "Granite Peak Offer"). The Debtors accepted the Granite Peak Offer, which was subject to receiving higher and better offers through a competitive bidding process.

As of July 15, 2014, with the exception of the initial pre-petition retainer, all of Winship's approved fees and expenses had been paid with cash collateral with the consent of the Collateral Agents and First Interstate Bank. On August 18, 2014, the Debtors and the Collateral Agents, entered into a Stipulation For Use of Cash Collateral and Authorization To Satisfy Certain Fees and Expense With Sale Proceeds ("Cash Collateral Stipulation").[8] The Cash Collateral Stipulation contained, *inter alia*, a carve-out for a portion of the proceeds from the sale of Assets, to be allocated to approved SSG professional fees and other sale related expenses, including but not limited to taxes, closing fees, and the approved break-up fee.

Pursuant to the Court-approved bidding procedures, on September 9, 2014, SSG conducted an auction of the Assets. Tolsa S.A. and/or its designees (collectively, "Tolsa") submitted the highest and best bid for the Assets with a purchase price of $4,250,000. On September 25, 2014, Debtors filed a motion seeking approval of the sale of Assets free and clear of all liens, claims, encumbrances and interests to Tolsa. On October 9, 2014, the Court entered an order approving the sale of the Assets to Tolsa, and the parties completed the sale on the same day.

On November 25, 2014, the Debtors filed a Motion for Supplemental Order in Conjunction with the Sale of Debtors' Assets ("Motion for Supplemental Order"), seeking entry of an order approving the assumption and assignment of certain executory contracts to Tolsa. On December 9, 2014, the Court granted the Motion for Supplemental Order, and the Debtors assigned those contracts to Tolsa at another closing. At this closing, the Debtors satisfied the following administrative fees associated with the sale: $216,387.61 to SSG Capital Advisors (financial advisor professional fee); $127,500 to Granite Peak Energy Services, LLC (stalking-horse break-up fee); and $231,506.95 to the taxing authority for real property taxes.

The Debtors deposited the remaining net sale proceeds, in the amount of $3,674,611.28, in a segregated debtor-in-possession bank account ("Tolsa Sale Proceeds"). As indicated in the Debtors' Report of Sale filed on March 9, 2015, the Tolsa Sale Proceeds have remained in the segregated

---

[8] *See* Cash Collateral Stipulation (Docket No. 414).

account pending the resolution of the dispute as to the allocation of said proceeds between First Interstate Bank and the Collateral Agents.[9]

**B.    The Non-Disclosure**

Bradley T. Hunsicker ("Hunsicker") was the primary attorney with Winship representing the Debtors prior to the Petition Date through June 5, 2015.  On January 22, 2015, Hunsicker met with Markus Williams to discuss potential employment with that firm.  Hunsicker's formal interviews with Markus Williams took place on February 13, 2015.

On March 11, 2015, Markus Williams made an employment offer to Hunsicker, and Hunsicker accepted the position on the same day.  Hunsicker did not inform Winship he was resigning his position with Winship until April 20, 2015.

Between March 11, 2015 and June 5, 2015, Hunsicker continued to sign and file all pleadings on behalf of the Debtors.  On June 5, 2015, almost three months after accepting a position with Markus Williams, Hunsicker filed his Motion to Withdraw as attorney for Debtors, informing the Court he would no longer be employed by Winship effective June 5, 2015.  Hunsicker did not disclose he had accepted a position with Markus Williams in the Motion to Withdraw, which was subsequently granted by the Court.  On June 16, 2015, Winship filed a Supplement to Application for Employment of Attorneys, for the first time informing the Court of Hunsicker's acceptance of an employment offer with Markus Williams.

**C.    Winship's Fee Applications**

From the Petition Date through June 5, 2015, Hunsicker performed nearly all of the bankruptcy services for the Debtors, including approximately 810 hours of work (93.7% of the total hours billed by Winship).  Winship filed several interim applications for compensation and reimbursement of expenses during these jointly-administered cases, and the Court entered the following orders approving those applications:

- Order Granting Winship's First USB Fee Application covering the period from March 14, 2013, through May 30, 2013, awarding

---

[9] *See* Report of Sale (Docket No. 501).

$61,135.00 in fees and $2,316.52 for reimbursement of expenses;[10]

- Order Granting Winship's Second USB Fee Application covering the period from June 3, 2013, through October 14, 2013, awarding $14,907.50 in fees and $111.47 for reimbursement of expenses;[11]

- Order Granting Winship's Third USB Fee Application covering the period from October 16, 2013, through February 28, 2014, awarding $17,415.00 in fees and $17.04 for reimbursement of expenses;[12]

- Order Granting Winship's Fourth USB Fee Application covering the period from March 3, 2014, through May 30, 2014, awarding $12,111.50 in fees and $421.53 for reimbursement of expenses;[13]

- Order Granting Winship's First RSP Fee Application covering the period from March 20, 2014, through May 30, 2014, awarding $12,627.50 in fees and $66.76 for reimbursement of expenses;[14]

- Order Granting Winship's First RSMP Fee Application covering the period from March 20, 2014, through May 30, 2014, awarding $14,732.50 in fees and $164.81 for reimbursement of expenses;[15]

---

[10] First USB Fee Application (Docket No. 217) and Order Approving First USB Fee Application (Docket No. 232).

[11] Second USB Fee Application (Docket No. 242) and Order Approving Second USB Fee Application (Docket No. 244).

[12] Third USB Fee Application (Docket No. 285) and Order Approving Third USB Fee Application (Docket No. 308).

[13] Fourth USB Fee Application (Docket No. 363) and Order Approving Fourth USB Fee Application (Docket No. 426).

[14] First RSP Fee Application (Docket No. 364) and Order Approving First RSP Fee Application (Docket No. 427).

[15] First RSMP Fee Application (Docket No. 365) and Order Approving First RSMP Fee Application (Docket No. 428).

- Order Granting Winship's Fifth USB Fee Application covering the period from June 2, 2014 through November 13, 2014 awarding $24,290.00 in fees and $1,350.75 for reimbursement of expenses;[16]

- Order Granting Winship's Second RSP Fee Application covering the period from June 2, 2014 through November 13, 2014 awarding $20,540.00 in fees and $1,230.95 for reimbursement of expenses;[17] and

- Order Granting Winship's Second RSMP Fee Application covering the period from June 2, 2014 through November 13, 2014 awarding $20,665.00 in fees and $1,042.41 for reimbursement of expenses.[18]

Currently, there are three pending fee applications filed by Winship covering the period when the non-disclosure occurred, and the UST filed objections to each fee application:

- Winship's Sixth USB Fee Application covering the period from November 14, 2014 through April 30, 2015 seeking an award of $12,495.00 in fees and $397.83 for reimbursement of expenses;[19]

- Winship's Third RSP Fee Application covering the period from November 14, 2014 through April 30, 2015 seeking an award of $10,530.00 in fees and $156.67 for reimbursement of expenses;[20] and

- Winship's Third RSMP Fee Application covering the period from November 14, 2014 through April 30, 2015 seeking an award of

---

[16] Fifth USB Fee Application (Docket No. 473) and Order Approving Fifth USB Fee Application (Docket No. 483).

[17] Second RSP Fee Application (Docket No. 475) and Order Approving Second RSP Fee Application (Docket No. 484).

[18] Second RSMP Fee Application (Docket No. 474) and Order Approving Second RSMP Fee Application (Docket No. 485).

[19] Sixth USB Fee Application (Docket No. 524).

[20] Third RSP Fee Application (Docket No. 526).

    $10,705.00 in fees and $156.67 for reimbursement of expenses.[21]

After independently reviewing the pending fee applications, the Court believes a hearing regarding the UST's objections would not materially assist the Court in its determinations. Thus, the Court shall incorporate its ruling on the pending fee applications herein.

**D. Administrative Claims**

  On November 12, 2014, Debtors filed their Motion for Order Approving Stipulation Resolving PAB Good Trucking, LLC's Motion for Allowance of Administrative Claim ("PAB Good Stipulation"). The Court approved the PAB Good Stipulation on January 6, 2015.[22] The approved PAB Good Stipulation provides PAB Good is entitled to a $50,000 administrative claim with respect to USB only, and a cash payment of $45,000 "payable solely from any proceeds attached to the unencumbered assets owned solely by [USB]."[23]

  On March 15, 2015, the Debtors filed a motion to establish a bar date for filing administrative expense claims. The Court set May 7, 2015 as the administrative claims bar date, and the following four administrative claims were timely filed:

- $500 for the Department of Revenue ("Government Admin Claim");
- $50,000 for Pab Good Trucking, LLC ("Pab Good Admin Claim");
- $171,575 for First Interstate Bank ("FIB Admin Claim"); and
- $34,441.17 for Winship ("Winship Admin Claim").

The Government Admin Claim and the PAB Good Admin Claim apply only to USB, while the FIB Admin Claim and Winship Admin Claim apply to all three Debtors.

**E. The Settlement Agreement**

  None of the Debtors have filed a Chapter 11 plan in any of their bankruptcy cases. As of May 5, 2015, each Debtor had accrued and

---

[21] Third RSMP Fee Application (Docket No. 525).

[22] *See* Order Approving Stipulation Resolving PAB Good Trucking, LLC's Motion for Allowance of Administrative Claim (Docket No. 490).

[23] *See id.*

continued to accrue administrative expenses, including professional fees and quarterly UST fees, in each of their cases. On May 5, 2015, the UST filed a motion to dismiss or convert all three cases. The UST does not oppose dismissal of the RSMP and RSP cases in accordance with § 349(a), but seeks conversion of the USB case from Chapter 11 to Chapter 7.

Seventeen days later, Hunsicker filed the Debtors' Settlement Motion, seeking entry of an order approving the Settlement Agreement dated May 22, 2015 (the "Settlement Agreement").[24] The Settlement Agreement was executed by representatives for the Debtors, the Collateral Agents, First Interstate Bank, PAB Good, and their respective counsel. Hunsicker represented the Debtors during the negotiations of the Settlement Agreement. The deadline to object to the Settlement Agreement was June 15, 2015. No creditors filed objections to the Settlement Motion.

In summary, the Settlement Agreement provides:

1. A specific allocation of the Tolsa Sale Proceeds, Adversary Proceeds and approximately $8,500 remaining in the Debtors' DIP account between First Interstate Bank, the Collateral Agents and the administrative claims;
2. The bankruptcy cases will be dismissed; and
3. The parties to the Settlement Agreement agree to oppose the UST Motion to Convert.

Under the Settlement Agreement, all administrative claims against all the Debtors will either be resolved by payment in full or by consent. However, the Settlement Agreement does not provide a distribution to USB's general unsecured creditors.

On June 11, 2015, the Court entered an Order approving the Settlement Motion. The UST filed an Objection to the Settlement Motion on the same date. On June 19, 2015, the Court entered a *sua sponte* Order Vacating the Order Approving the Settlement Motion because the Order approving the Settlement Motion was entered in error.

---

[24] *See* Settlement Motion (Docket No. 532). On May 29, 2015, in conjunction with the terms of the Settlement Agreement, the Debtors also filed a Motion to Dismiss Bankruptcy Cases Pursuant to 11 U.S.C. § 1112(b) (Docket No. 539). In the Motion to Dismiss, the Debtors seek the entry of an order dismissing the three bankruptcy cases in the event that an order is entered approving the Settlement Agreement. The Motion to Dismiss is pending.

**DISCUSSION**

The central issue concerns the non-disclosure of an actual conflict that arose on March 11, 2015, the date Hunsicker received and accepted a position with Markus Williams. This dispute could have been avoided had Hunsicker or Winship made the required supplemental disclosure when the conflict arose, and taken appropriate action to screen Hunsicker from these cases. Alas, those are not the facts before this Court. Rather, the three-month delay in making the supplemental disclosure is troubling, particularly when during the same period, the Settlement Agreement was negotiated, finalized and memorialized, and Winship and Markus Williams represented two of the four parties to the agreement.

**A.    Employment and Disclosure Standards**

Under § 327(a), debtors-in-possession may hire professionals with court approval:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.[25]

Section 327(a) sets forth two requirements: 1) counsel must "not hold or represent an interest adverse to the estate" and 2) must be a "disinterested person."[26] "Together, the statutory requirements of disinterestedness and no interest adverse to the estate serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities."[27] "The propriety of employment under § 327 must be examined on a case-by-case basis."[28]

---

[25]  11 U.S.C. § 327(a).

[26] *In re 7677 East Berry Ave. Assoc., LLP*, 419 B.R. 833, 841 (Bankr. D. Colo. 2009) (citing *In re Cook*, 223 B.R. 782, 789 (10th Cir. BAP 1998)).

[27]  *Id.* (citing *In re Crivello*, 134 F.3d 831, 836 (7th Cir. 1998)) (internal quotation omitted).

[28]  *Id.* at 844.

In furtherance of the disinterestedness standard of § 327(a), FED. R. BANKR. P. 2014(a) requires all applications for employment "be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any other person employed in the office of the United States trustee."[29] "These disclosure requirements are not discretionary."[30] As the United States Bankruptcy Appellate Panel for the Tenth Circuit ("Tenth Circuit BAP") previously explained:

> This Court has held that counsel for a debtor in possession has a fiduciary duty to the estate, requiring that he or she exercise independent professional judgment on behalf of the estate. *Jensen v. United States Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 850 (10th Cir. BAP 1997); *see Interwest Bus. Equip., Inc. v. United States Trustee (In re Interwest Bus. Equip., Inc.)*, 23 F.3d 311, 316 n.9 (10th Cir. 1994) (debtor in possession is also a fiduciary of the estate). **Failure to properly exercise that independent professional judgment may result in a total denial of fees.** *Smitty's Truck Stop*, 210 B.R. at 850. Counsel's fiduciary duty includes its responsibility to disclose any actual or potential conflicts of interest with the estate, *id.*, and must also include a responsibility to evaluate the facts of the case and the law to determine whether a debtor is eligible for relief under the chapter of the Bankruptcy Code which the petition is filed.[31]

Furthermore, and importantly for the instant dispute, the disclosure requirements under Rule 2014(a) continue after the initial application to

---

[29] FED. R. BANKR. P. 2014(a).

[30] *In re Cook*, 223 B.R. 782, 790 (10th Cir. 1998)(citing *In re EWC, Inc.*, 138 B.R. 276, 280 (Bankr. W.D. Okla. 1992)).

[31] *In re Double J Cattle Co*, 226 B.R. 284, 1997 WL 837762, at *8 (10th Cir. BAP 1997) (unpublished) (emphasis added). *See also, KLG Gates LLP v. Brown*, 506 B.R. 177, 193 (E.D.N.Y. 2014) (and cases cited therein).

employ is approved.[32]  Hunsicker and Mr. Winship acknowledged this continuing obligation at trial.

This Court agrees with the broad construction of Rule 2014(a), and the conclusion that Rule 2014(a) creates a continuing obligation for counsel to advise the Court when a potential or actual conflict of interest arises during the representation of a debtor-in-possession.  The required supplemental disclosure allows the Court, not counsel, to determine whether a conflict exists and counsel remains disinterested under § 327(a).  Failing to make a supplemental disclosure robs the Court the power to make such a determination.

The Tenth Circuit BAP explained the penalty for failing to fully disclose connections in violation of Rule 2014(a):

> "'Given that the duty is upon the attorney to "divulge conflicts, and not upon the client to ferret them out", the attorney should . . . evaluate for himself, as well as for his client, any potential for impropriety that might arise. . . .'"  *Id.* (quoting *In re King Resources Co.*, 20 B.R. 191, 201 (D. Colo. 1982)).  In fulfilling this duty, the attorney has a duty to fully disclose any connections with the debtor or creditors that might create a possible conflict, and all fee arrangements with the debtor in possession.  *Interwest*, 23 F.3d at 316 n. 9; *Bonneville Pac. Corp.*, 196 B.R. at 886.  **Failure to disclose connections that have the potential for creating a conflict warrants a denial of all compensation to debtor's counsel**.  *Interwest*, 23 F.3d at 318.[33]

In turn, the limitations on the compensation of professionals are set forth in § 328(c), which provides:

> Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services

---

[32] *In re Smitty's Truck Stop,* Inc., 210 B.R. 844, 850 (10th Cir. BAP 1997); *see also, KLG Gates LLP v. Brown*, 506 B.R. 177, 193 (E.D.N.Y. 2014), stating:

> This obligation to make disclosure of any connection continues beyond the court's approval of an employment application.  *Forizs & Dogali, P.A. v. Siegel*, 2012 WL 4356266, at *3 (M.D. Fla. Sept. 24, 2012).  Namely, the obligation to disclose is a continuing one.  *Id.*

[33] *Smitty's Truck Stop*, 210 B.R. at 850.

and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.[34]

Section 328(c) "gives the bankruptcy court discretion to deny compensation and reimbursement to a professional who had a conflict of interest. If it is determined that a professional employed by the estate was not disinterested, or held or represented an interest adverse to the estate at any point during the course of the representation, the court may deny fees and expenses."[35] Although the failure to disclose warrants total denial of compensation, this Court has wide discretion to determine whether full or partial denial or disgorgement of fees and expenses is appropriate.[36]

### B.    UST's Motion to Disqualify and Disgorge Fees

During settlement negotiations in the eleventh hour of these jointly administered cases, Hunsicker interviewed and accepted an associate attorney position with Markus Williams. Markus Williams represents the Collateral Agents in these cases, and the Collateral Agents are a party to the Settlement Agreement. At trial, the parties conceded this created a connection which should have been disclosed to the Court and the UST.

The Court agrees. Hunsicker's acceptance of a position with Markus Williams in the midst of settlement negotiations with creditors, and most notably the Collateral Agents, should have been disclosed. The Court does not admonish Hunsicker for accepting a position at another firm. But accepting a position at a law firm representing one of the largest creditors in a case where one represents the debtor must be disclosed. Regardless of the Debtors' limited role in those negotiations, the connections between the

---

[34] 11 U.S.C. § 328(c). *See also In re Interwest Bus. Equip., Inc.*, 23 F.3d 311, 317 (10th Cir. 1994) ("Examination of the surrounding Bankruptcy Code sections on professionals shows a consistent statutory scheme to give the bankruptcy judge discretion and power to ensure professionals are disinterested and do not represent interests adverse to the estate regardless of objection by party in interest.").

[35] *In re Cook*, 223 B.R. 782, 793 (10th Cir. BAP 1998) (citing *Gray v. English*, 30 F.3d 1319, 1323-24 (10th Cir. 1994); *Smitty's Truck Stop*, 210 B.R. at 850).

[36] *Id.* at 794.

firms and the parties at a minimum created the appearance of impropriety. Mr. Winship could have removed Hunsicker from the matter immediately, personally continued the Debtors' representation and completed the settlement negotiations.  Neither Hunsicker nor Mr. Winship provided the Court with an explanation for their apparent lapse of judgment in failing to disclose this connection and take remedial measures.

Further, under § 327(a) and Rule 2014(a), there is no question Hunsicker and his firm, Winship, had the fiduciary duty and responsibility to disclose Hunsicker's move to Markus Williams.  It is also undisputed Winship and Hunsicker failed to do so for over three months.  The failure to disclose the connection between Hunsicker and Markus Williams warrants denial and disgorgement of fees and expenses.  The questions then become the amount of the penalty and the means of enforcement of the penalty through denial or disgorgement of compensation.

In the Motion to Disqualify, the UST seeks denial of Winship's pending fee applications and disgorgement of **all** fees and expenses incurred in connection with all three jointly-administered bankruptcy cases.  The UST asserts Winship's failure to disclose the connection to Markus Williams warrants such relief.  However, at trial, the UST agreed this Court has the discretion to determine the appropriate penalty on a case-by-case basis.

In response, Winship argued total denial of compensation and disgorgement of all fees and expenses was inappropriate given the status of these cases, and the legal services performed since the Petition Date. Winship admitted the supplemental disclosure should have been made earlier than June 16, 2015, and closer to April 20, 2015, when Winship learned of Hunsicker's new position.  Specifically, Winship stated "[Winship] will not request compensation for its work during that period of time from the bankruptcy estates."[37]

Based upon the circumstances of this case, the Court believes the failure to supplement disclosures does not warrant complete denial and disgorgement of compensation.  However, the Court also believes prohibiting fees from only April 20, 2015, through June 16, 2015, is an insufficient penalty.

---

[37] Debtors' Memorandum in Support of Objection to Motion to Disqualify, at p.12 (Docket No. 586).

  The initial disclosures set forth in the original three applications to employ Winship as counsel for the Debtors are not at issue. The Court previously approved Winship as counsel for the Debtors under the applicable § 327(a) standards, and at that time, Winship complied with Rule 2014(a). However, as approved counsel for the Debtors, Winship owes a continuing fiduciary duty to the Debtors' estates to disclose any potential or actual conflicts.[38] Although Mr. Winship, in his capacity as a shareholder of Winship, did not know Hunsicker had accepted a new position until April 20, 2015, Hunsicker knew as of March 11, 2015. Thus, the Court believes March 11, 2015, is the operative date for the determination of a penalty for the non-disclosure under the facts of this case.

  Based on the Court's review of Winship's three pending fee applications, Winship incurred a total of $5,640.00 in fees and $412.10 in expenses between March 11, 2015, (the date Hunsicker accepted a position with Markus Williams) and April 30, 2015 (the last date included in these fee applications).[39] This compensation has not yet been approved, or paid to Winship.

  The Court shall not require the Debtors to pay Winship and disgorge the funds later. Rather, the Court will not approve the $5,640.00 in fees and $412.10 in expenses incurred in these jointly administered cases between March 11, 2015, and April 30, 2015. Winship is not entitled to payment of those fees and expenses from any source. In addition to denying those fees and expenses, the Court shall also prohibit Winship from seeking any fees or expenses incurred between April 30, 2015, through August 20, 2015, for legal services in these three cases. However, based on the Court's review of the three pending fee applications, the Court will grant in part Winship's request to approve the fees and reimbursement of expenses from November 14, 2014, through March 10, 2015, over the UST's objections.

  Further, at this stage of these cases, and as set forth below, the Court finds the requested disqualification of Winship is not warranted. Hunsicker created the conflict here, and he has left Winship. The punishment for the non-disclosure is reflected in the denial and prohibition from seeking

---

[38] *Smitty's Truck Stop,* 210 B.R. at 850.

[39] The Court calculated these figures by totaling all time entries spanning March 11, 2015 through April 30, 2015, based upon the time entries set forth in the detailed billing statements attached to each fee application.

compensation from March 11, 2015, through August 20, 2015.  The Court believes this punishment fits these facts.

Moreover, the UST's arguments on disqualification were unpersuasive, and the Court concludes the cost and delay involved in forcing the Debtors to retain new counsel at this point to shepherd these cases through dismissal is of no benefit.  Therefore, the Court shall permit Winship to remain as counsel for the Debtors to complete representation of the Debtors in these jointly administered cases for all purposes.

### C.   The Debtors' Settlement Motion

Courts assess requests to approve compromises under Rule 9019(a), and "a court's general charge is 'to determine whether the settlement is fair and equitable and in the best interests of the estate.'"[40]  In determining whether a settlement or compromise is fair and equitable and in the best interest of the estate, courts generally analyze the following factors: "(1) the probability of the success of the litigation on its merits; (2) any difficulty which may arise in the matter of collection; (3) the complexity of the litigation involved, and expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of creditors and deference to their reasonable views."[41]

The Debtors assert the settlement is fair and equitable and in the best interest of the estate because "it avoids the cost, delay, and risk of further litigation.  All creditors that have asserted interests in said funds are parties to the Agreement and are agreeing to resolve their disputes in a fashion that allows for the resolution of all Admin Clams."[42]  In the absence of the Settlement Agreement, the Debtors anticipate four different complex legal actions will be necessary to interpret the Cash Collateral Order, object to First Interstate Bank's claim, and parse the various competing interests in the Tolsa Sale Proceeds, the Unencumbered Adversary Proceeds, and the balance of any remaining funds held in the Debtors' dip accounts.  The

---

[40] *Official Committee of Unsecured Creditors v. Western Pacific Airlines, Inc. (In re Western Pacific Airlines, Inc.)*, 219 B.R 575, 579 (D. Colo. 1998) (quoting *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 105 B.R. 971, 976 (D. Colo. 1989)).

[41] *In re Hermitage Inn, Inc.*, 66 B.R. 71, 72 (Bankr. D. Colo. 1986) (citations omitted).

[42] Settlement Motion, at ¶ 20.

Debtors' arguments as to the anticipated costs of litigation and the increase in already high administrative claims are persuasive.

The UST's Objection to the Settlement Motion asserts the settlement is not fair and equitable and in the best interest of the estate because the settlement was obtained through a tainted process and is not in the best interest of the USB estate.  First, with respect to the alleged tainted process, the UST asserts Winship had a duty to disclose any actual or potential conflicts of interest as they arose, and failed to do so.  Second, the UST asserts the settlement is not in the best interest of the USB estate because some of the administrative expense claims will be paid on a *pro rata* basis and unsecured creditors receive nothing. The UST's arguments opposing approval of the Settlement Agreement are unpersuasive.

As set forth above, the Court will penalize Winship for the non-disclosure.  The Court will not penalize the parties to the Settlement Agreement.  The equities of this case indicate approval of the Settlement is in the best interest of the creditors and the estate, primarily because the estates are administratively insolvent.  There simply is not enough money to satisfy all claims, and if the Settlement Agreement is denied, whatever funds remain after the anticipated litigation will be exhausted quickly.

Most importantly, the Court does not believe the Settlement Agreement itself is "tainted."  The evidence establishes the Settlement Agreement was reach in good faith and at arms' length.  Despite the move Hunsicker made from Winship to Markus Williams, there were four parties to the Settlement Agreement, not only the Debtors and the Collateral Agents.  Both PAB Good and First Interstate Bank were each represented by different counsel during those negotiations.  If the existence of other parties and attorneys in this settlement was not enough, the most dispositive evidence was the Declaration of Mr. Lansing, counsel for First Interstate Bank.  Mr. Lansing stated:

> During the settlement negotiations between the Collateral Agents and First Interstate Bank, the Debtors' counsel, Brad Hunsicker, only provided information to each party and never provided any influence or opinion as to the split of any of the [Tolsa] Sale Proceeds from the sales of the Debtors' assets. . . . Mr. Hunsicker remained neutral on the allocation of the sales proceeds.[43]

---

[43] Exhibit K, at ¶ 9.

Thus, no collusion or conspiracy appears here.  The evidence established Hunsicker had a minor, if any, role in the settlement process and the Debtors had no material stake in the outcome of the allocation of remaining assets.  Accordingly, despite the non-disclosure, the Settlement Motion shall be approved as both fair and equitable, and in the best interests of the estates.

In addition, the Court must address the impact of its ruling on the Settlement Agreement because the $6,052.10 figure is encompassed in the $34,441.17 defined term "Winship Admin Claim."  In the Court's discretion, the Court finds the term "Winship Admin Claim" must be reduced by $6,052.10.  Thus, the Court holds the term "Winship Admin Claim" in the Settlement Agreement is redefined as $28,389.07.  This amendment leaves the Settlement Agreement intact without the need to alter any other terms.  Accordingly, the Settlement Agreement shall be deemed so amended.[44]

## CONCLUSION

Based on the foregoing, the Court

ORDERS the UST's Motion to Disqualify is GRANTED IN PART.  As a result of the non-disclosure, the $5,640.00 in fees and $412.10 in expenses incurred in these jointly administered cases between March 11, 2015, and April 30, 2015, are hereby DENIED, and Winship is not entitled to payment of those fees and expenses from any source.  In addition, Winship is hereby barred from seeking any fees or expenses incurred between April 30, 2015, through August 20, 2015, in these three cases.  The Court

FURTHER ORDERS the UST's Motion to Disqualify is DENIED in all other respects.  Winship shall not be disqualified as counsel for the Debtors, and Winship may continue and complete representation of the Debtors in these jointly administered cases.  The Court

FURTHER ORDERS Bradley T. Hunsicker is prohibited from participating in and representing any party in connection with these jointly administered cases.  Markus Williams shall continue to screen Mr. Hunsicker from these cases, failing which this Court may impose sanctions.  The Court

---

[44] The parties may consummate the Settlement Agreement as drafted with only the changed definition of "Winship Admin Claim."  The Court recognizes there will be an excess $6,052.10 that will revert to the Debtors, however, the Court need not reach the disposition of the excess $6,052.10.  For clarity, as set forth herein, under no circumstances shall Winship receive any portion of those funds.

FURTHER ORDERS the Debtors' Settlement Motion (Docket No. 532) is GRANTED. The Debtors may enter into the subject Settlement Agreement according to its terms and conditions as amended herein, with a $6,052.10 deduction from the defined term "Winship Admin Claim." The Debtors are authorized to take all actions deemed necessary to fulfill their duties and obligations under the Settlement Agreement as amended herein. The Court

FURTHER ORDERS Winship's Sixth USB Fee Application (Docket No. 524) is GRANTED IN PART. Winship is allowed a fee for services of $9,030.00, and reimbursement of expenses of $99.69 for the period from November 14, 2014, through March 10, 2015, for services rendered in connection with USB. The request for an award of compensation from March 11, 2015, through April 30, 2015, is DENIED. The Court

FURTHER ORDERS Winship's Third RSP Fee Application (Docket No. 526) is GRANTED IN PART. Winship is allowed a fee for services of $9,530.00, and reimbursement of expenses of $99.69 for the period from November 14, 2014, through March 10, 2015, for services rendered in connection with RSP. The request for an award of compensation from March 11, 2015, through April 30, 2015, is DENIED. The Court

FURTHER ORDERS Winship's Third RSMP Fee Application (Docket No. 525) is GRANTED IN PART. Winship is allowed a fee for services of $9,530.00, and reimbursement of expenses of $99.69 for the period from November 14, 2014, through March 10, 2015, for services rendered in connection with RSMP. The request for an award of compensation from March 11, 2015, through April 30, 2015, is DENIED.

Dated September 3, 2015                    BY THE COURT:

_____
Michael E. Romero, Judge
United States Bankruptcy Court